### In re WIESEBROCK.

#### (District Court, E. D. New York. July 10, 1911.)

1. BANKRUPTCY (§ 241*)—EXAMINATION OF BANKRUPT—FALSE TESTIMONY—PUNISHMENT—CONTEMPT.

Where a bankrupt, on his examination, was guilty of contumacious conduct and false swearing, the scope of the bankruptcy court's jurisdiction to punish him depended on interference with the exercise of the court's jurisdiction, and not on the injury to the public welfare and morals, which is the basis of punishment for perjury.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 405; Dec. Dig. § 241.*]

2. BANKRUPTCY (§ 241*)—CONTEMPT—FALSE SWEARING—PUNISHMENT.

Where a bankrupt was guilty of contumacious conduct and false swearing in his examination before creditors, but had purged himself of the greater part of the contumacious acts, which related to the concealment of assets and imaginary incurring of debt, and his creditors did not seek to prosecute him criminally or to recover any assets, his punishment for contempt would only extend to an adequate punishment for his disregard of his duties as a bankrupt and his failure to properly comply with the bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 241.*]

In the matter of bankruptcy proceedings against Robert Wiesebrock. On application to punish the bankrupt for contempt and giving false testimony. Granted.

Willett & Frost, for bankrupt.
Francis M. Eppley, for objecting creditor.

CHATFIELD, District Judge. The bankrupt has been denied his discharge on the merits, because of false testimony before the referee in an attempt to conceal assets properly belonging to his estate. While the discharge proceedings were pending, an application was made to punish him for contempt for interfering with the bankruptcy pro-

ceedings by the giving of this false testimony, and by his failure to give correct information regarding the actual assets of his estate. The referee has certified to that effect, and the matter was referred to the district attorney for this district in the following memorandum:

"The bankrupt so acted and testified as to justify the report of the referee, as certified, that he was in flagrant contempt; but this contemptuous conduct was as to matters which should have been made the basis of a criminal charge, as well as used in opposing the discharge. If false testimony is a means of concealing assets, then an order to turn over property may be made the basis of a contempt proceeding as an alternative in case of disobedience; but this court does not wish to act in place of a petit jury, upon a pure question of perjury, disguised as a failure to respect the court (the crime being a failure to respect the oath). The matter will be referred to the district attorney; but, as the statute of limitations may have run as to some or all of the matters, a determination upon this motion will be left until the district attorney has finished his investigation."

The United States attorney has informed the court that no action was deemed advisable, but has not stated whether this was because of the apparent running of the statute of limitations, or whether his action was based upon other reasons.

[1] Assuming that no criminal action can be taken, the creditors have renewed the motion to have the bankrupt punished for contempt. His way of testifying and his actions before the referee were sufficient, as shown by the testimony, to justify an order declaring his conduct contumacious; but the scope of this court's jurisdiction to punish him therefor depended upon the interference with the exercise of that jurisdiction, and not with the injury to the public welfare and morals which is understood to be the basis for the crime of perjury, upon a trial for which the defendant is entitled to have the people proceed (rather than individual creditors) by way of indictment and trial by jury.

The certificate of the referee and the testimony show that, before the reference was completed, much of the careless or false testimony was admitted or corrected by the bankrupt. At that time any proper proceeding for the criminal act of perjury could and should have been brought to the attention of the prosecuting authorities of the district. Any interference with the activities of the creditors or of the referee in locating assets of the estate could have been treated as a contempt (including the giving of false testimony with regard thereto), for the purpose of vindicating the court's authority and discovering assets. But even then the bankrupt would have been allowed to purge himself of contempt, in so far as he could by giving correct testimony or information as to the property, and the creditors would then have been compelled to proceed by attempting to secure this property directly. This attempt might have taken the form of a direction by the court that the bankrupt purge himself of contempt by disclosing the whereabouts of his property; but such a proceeding would not have been countenanced to the extent of forcing a civil settlement of his debts under the threat of contempt proceedings.

[2] As the matter stands at present, the creditors did not seek to prosecute criminally, they did not seek to recover any assets, and the bankrupt has purged himself of the greater part of the contemptuous

acts which had to do with the concealment of assets and imaginary incurring of debt. He is still liable to punishment for his disregard of his duties as a bankrupt and the way in which he failed to comply with what the bankruptcy statute requires him to do.

To that extent the report of the referee should be confirmed, and he may be ordered to appear before the court for a disposition of the matter.